IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

# UNTE HENDERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-54159     Don R. Ash, Judge**

_____

**No. M2004-00938-CCA-R3-PC - Filed April 15, 2005**

_____

The petitioner, Unte Henderson, appeals from the Rutherford County Circuit Court's denial of his petition for post-conviction relief from his guilty pleas to second degree murder and conspiracy to commit aggravated robbery and effective nineteen-year sentence. He contends that he received the ineffective assistance of counsel because his attorney coerced him into pleading guilty. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

Larry D. Brandon, Murfreesboro, Tennessee, for the appellant, Unte Henderson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the robbery and murder of Cory Talley. On January 10, 2003, the petitioner pled guilty to second degree murder and conspiracy to commit aggravated robbery. At the plea acceptance hearing, the state summarized the evidence against the petitioner as follows:

> On or about March 18, 2002, that Mr. Henderson, along with Mr. Crawford, did involve themselves in a robbery of a victim named Mr. Cory Talley. The location of this event was, Hookers Bait and Tackle Shop, in Rutherford County, State of Tennessee. And that at this particular location where this happened that Mr. Crawford, who is the codefendant, the state believes fatally shot Mr. Talley, two times with a 380 caliber handgun.

During part of this altercation, Mr. Henderson was in contact with the victim, Mr. Talley, and at some point did have his hands on him and was holding him. After Mr. Talley had been shot the proof would be that it appears from the evidence and from the statements given that his pockets were gone through. There were items taken from his vehicle. And after that Mr. Henderson and Mr. Crawford then fled the scene. They were developed as suspects. They were interviewed by the police. As a result of that interview there was bloody clothes recovered from a trash dumpster. In that trash dumpster there were clothes that apparently were worn by Mr. Henderson at the time that did have what the state believed to be the victim's blood on them. Also a weapon was recovered. It was found in a local body of water by Detective Jack Keisling of the sheriff's department. That firearm was sent to the lab and was determined to be the murder weapon.

Judge, both Mr. Crawford and Mr. Henderson were interviewed by the police. And as a result after those interviews or during those interviews they did tell, although different stories at different times about what happened, they both did make statements that were very inculpatory and weighs out to a confession as to their involvement both in the robbery and in the murder.

Following the state's proffer, the trial court informed the petitioner of his constitutional right (1) to a speedy and public trial, (2) to a jury trial, (3) to the assistance of counsel, (4) to see, hear and cross-examine witnesses, (5) to compel the production of favorable evidence, (6) to a presumption of innocence, (7) to remain silent, (8) to have a jury impose any fine in excess of $50 and, if convicted, (9) to file a motion for new trial. The trial court asked the petitioner if his attorney had explained the range of punishment and what the state would have to prove in order to convict him, as well as defenses available, and if the petitioner had gone over the plea agreement with his attorney. The petitioner answered these questions in the affirmative. The trial court asked the petitioner if he had been forced or coerced to enter the plea and if the petitioner had any "gripes or complaints" against his attorney. The petitioner replied no to each question. The trial court accepted the petitioner's pleas, found him guilty of second degree murder and conspiracy to commit aggravated robbery, and sentenced him to nineteen years for the second degree murder and three years for the conspiracy to commit aggravated robbery, to be served concurrently in the Department of Correction.

The petitioner filed his petition for post-conviction relief claiming that he received the ineffective assistance of counsel because he was coerced by his attorney into pleading guilty. The petition asserts that the petitioner's attorney advised him that if he went to trial, he would be convicted of first degree murder and would be sentenced to fifty-one years. The petition alleges that the petitioner felt coerced because he did not receive videotapes of witnesses until the day before he

was to enter his plea. The petition also alleges that the petitioner requested a change of venue, that his attorney told him he would file the necessary motion, but that he never received a copy.

At the post-conviction hearing, the petitioner testified that he felt coerced because he did not receive videotapes of witnesses the state intended to call until the day before the plea acceptance. He said the videotapes were brought to the jail for him to review. He said he reviewed the videotapes and saw the witnesses that would be presented to testify against him at trial. The petitioner said that he and his attorney had conflicting views about one of the witness's testimony. He said the attorney believed the testimony was damaging but that he did not. The petitioner testified that his attorney encouraged him to plead guilty based on that one witness's testimony. The petitioner testified that he and his attorney did not review the videotapes together. The petitioner also claims that he was coerced because he did not receive documents pertaining to his trial until the last minute. However, the petitioner conceded that he had the opportunity to review the documents. The petitioner testified that he was given all the videotapes and two hours to review them at the jail. The petitioner said he did not make a complaint against his attorney because he thought he was supposed to go along with everything.

The petitioner testified that he based his decision to plead guilty on his attorney's judgment. He said he did not feel that he should have pled guilty. The petitioner testified that he did not understand what he was doing at the time he entered his plea. He said he answered "yes" to the questions that he was asked because he thought if he did not, the plea would be taken away, and he would receive a sentence of fifty-one years. The petitioner testified that he and his post-conviction attorney had met and gone over the transcript from the plea acceptance hearing. He acknowledged that his testimony at the post-conviction hearing was different from his testimony at the plea acceptance hearing.

The petitioner testified that he met with his trial attorney four or five times after he was appointed and that he understood what he was charged with. He said he did not think he had a chance to review everything before trial because he did not receive all of it until the last minute. He said his trial attorney told him that if he did not take the plea, he would get a worse sentence. The petitioner testified that he wanted a change of venue because of pretrial publicity. He said he knew of no hearing regarding a change of venue. He said his attorney's performance was deficient for failing to attempt to change venue.

On cross-examination, the petitioner acknowledged that there was only one videotape he did not watch, that he had no complaints about watching the videotapes, and that he watched the videotapes he wanted to watch. The petitioner also said that he read all the documents he received pertaining to his trial and that he had no complaints about reading the documents. The petitioner acknowledged he received letters from his attorney regarding an offer, about motions, and about the charges against him. He said that his attorney discussed the charges against him and told him he could receive up to fifty-one years. The petitioner acknowledged that he met with his trial attorney five or six times and that he spent as much time as needed with his attorney when he met with him.

The petitioner acknowledged that he knew he could have gone to trial, testified, and subpoenaed witnesses.

The petitioner's trial attorney testified that he was appointed to represent the petitioner in September 2002. Following his appointment, he obtained a copy of the court file, filed pretrial motions, filed a discovery request, and went to see the petitioner. He testified that the first time he met with the petitioner, he spent about three hours with him going over the indictment, reviewing the court file, and discussing the facts of the case. He said he explained the charges to the petitioner, gave the petitioner copies of statutes under which the petitioner was charged, as well as sentencing statutes for first degree murder, and reviewed them with the petitioner.

The trial attorney testified that he and the petitioner did not watch the witness videotapes together because the petitioner became upset and refused to watch the tapes further. He said he did discuss the contents of the videotapes with the petitioner and how they would be used at trial.

The trial attorney testified that he never discussed with the petitioner what the length of his sentence might be. He said he gave the petitioner a copy of the sentencing statutes on murder and let him derive from that his exposure. The trial attorney stated that he never told the petitioner that proceeding to trial would result in a conviction. However, he said he did tell him that if he did not win at trial, he would face a substantial period of time in the penitentiary. The trial attorney testified that he never discussed a change of venue with the petitioner. He said that he knew nothing to indicate the petitioner was coerced into pleading guilty. He said the petitioner was an intelligent young man, who had plenty of time to digest his choices.

On cross-examination, the trial attorney acknowledged that he had represented a large number of people charged with serious crimes, conducted several trials, and tried several murder cases. He stated he believed he did what was best for the petitioner by advising him to plead guilty. The attorney said that he reviewed the plea agreement with the petitioner and that the petitioner knew what he was doing by entering into the plea agreement.

The trial court found that the petitioner failed to show his trial attorney's performance fell below the standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). It found the attorney's representation to be "outstanding." It also found nothing to undermine the confidence and the outcome of the guilty plea. It further found that the plea was voluntarily entered and free from coercion based upon petitioner's intelligence; his familiar attitude with criminal proceedings; the fact that he was represented by competent counsel and had opportunity to confer with counsel; the advice of counsel and the court about the charges against the petitioner; and the petitioner's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against

those findings.  Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001).  Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness.  Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993).  In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty.  See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The petitioner contends that he received the ineffective assistance of counsel because his attorney coerced him into pleading guilty instead of going to trial.  The petitioner also contends he was coerced into pleading guilty because he did not receive videotapes of the state's witnesses until the day before he was supposed to enter his guilty plea.  The state claims that the petitioner was not coerced and that he voluntarily entered his plea.  We agree with the state.

At the post-conviction hearing, the petitioner's trial attorney testified he did not know anything to indicate that the petitioner was coerced into pleading guilty.  The attorney also stated that he would not have let the petitioner enter the plea if the petitioner did not know what he was doing.  During the post-conviction hearing, the trial court asked the petitioner the following questions concerning his testimony at the plea acceptance hearing:

> THE COURT:  Stop there, on page 6, Line 15, I asked you under oath, you got any gripes or complaints against him, what did you tell me?
>
> [THE PETITIONER]:  I said no sir.
>
> THE COURT:  On Page 6, Line 1, sir, has anyone forced you or coerced you to enter this plea today.  What was your answer?
>
> [THE PETITIONER]:  No, sir.

| | |
|---|---|
| THE COURT: | So, what am I supposed to do? Just guess whether or not you're telling me the truth? |
| [THE PETITIONER]: | No. I understand what your position is. I just didn't want you to take the plea back from me then at the time. Because I thought if you did I was going to get a life sentence. |
| THE COURT: | Right. You were afraid if you went to a jury trial, you were going to get a life sentence, right? |
| [THE PETITIONER]: | Yes, sir. Because my lawyer, who supposed to be defending me, this is what he is telling me. |
| THE COURT: | He was right, wasn't he? If you were convicted you could have gotten a life sentence. |
| [THE PETITIONER]: | Yes, sir. |
| THE COURT: | If I set this aside and we have a trial, you understand you'd be going to the penitentiary for 51 years, never getting out. |
| [THE PETITIONER]: | Yes, sir. I'm ready to take that chance, your Honor. |

We conclude that the evidence does not preponderate against the trial court's finding that the petitioner failed to show by clear and convincing evidence that he was coerced into accepting the plea agreement.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE